*No. 24-10132*

IN THE

# United States Court of Appeals

FOR THE ELEVENTH CIRCUIT

➤➤ ◄◄

COMMODITY FUTURES TRADING COMMISSION,

*Plaintiff-Appellee,*

*against*

OASIS INTERNATIONAL GROUP, LIMITED, et al.,

*Defendants,*

MICHAEL J. DACORTA,

*Defendant-Appellant.*

―――――――――

*On Appeal from the United States District Court
for the Middle District of Florida
Honorable Sean P. Flynn
Case No. 8:19-cv-00886-VMC-SPF*

## REPLY BRIEF FOR DEFENDANT-APPELLANT

LAW OFFICE OF STEPHEN N. PREZIOSI PC
*Attorneys for Defendant-Appellant*
48 Wall Street, 11th Floor
New York, New York 10005
212-960-8267



PHP   (212) 719-0990
appeals@phpny.com

# U.S. COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT (CIP)

CFTC _____ *vs.* DACORTA _____ Appeal No. 24-10132 _____

11th Cir. R. 26.1-1(a) requires the appellant or petitioner to file a Certificate of Interested Persons and Corporate Disclosure Statement (CIP) with this court within 14 days after the date the case or appeal is docketed in this court, and to include a CIP within every motion, petition, brief, answer, response, and reply filed. Also, all appellees, intervenors, respondents, and all other parties to the case or appeal must file a CIP within 28 days after the date the case or appeal is docketed in this court. **You may use this form to fulfill these requirements.** In alphabetical order, with one name per line, please list all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party. *(Please type or print legibly)*:

J. Alison Auxter, attorney for CFTC in U.S. District Court

Joseph Anile,  co defendant  last known to be in custody.

Francisco Duran, co defendant, address unknown.

John Haas, co defendant, address unknown.

Honorable William Jung, trial judge U.S. District Court Middle District of Florida

RONALD KURPIERS  defense attorney in US District Court 805 W. Azeele St. Tampa, Fl 33606

Jeffery C. Le Riche, attorney for CFTC in U.S. District Court

Raymond Montie, co defendant, address unknown.

Burton Wiand, receiver in lower court. 5505 W.Gray St. Tampa, FL 33609

Submitted by:

Signature: _____

Name: Stephen N. Preziosi                  Prisoner # (if applicable): _____

Address: 48 Wall Street, 11th Floor New York, New York 10005

Telephone #: 212-960-8267

Rev.: 2/23

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES................................................................................. iii

POINT I.............................................................................................................1

NEITHER MR. DACORTA NOR THE OASIS ENTITIES
TRADED FOR OR ON BEHALF OF ANY INDIVIDUAL AND
THIS ISSUE WAS ARGUED IN THE COURT BELOW AND
PRESERVED FOR APPELLATE REVIEW .......................................................1

IN RESPONSE TO THE CFTC'S ARGUMENT IN POINT I(A).....................1

The Issue Raised Under 7 U.S.C. §6b Was Preserved For
Appellate Review In Mr. DaCorta's Motion To Dismiss.............................1

The Issue Raised Under 7 U.S.C. §6b Was Preserved For
Appellate Review In Mr. DaCorta's Answer To The CFTC's
Motion For Summary Judgment ................................................................3

POINT II ...........................................................................................................4

THERE WAS NO AGENCY LIKE RELATIONSHIP AND THE
LENDERS DID NOT HAVE AN OWNERSHIP INTEREST IN
THE FUNDS IN QUESTION.............................................................................4

IN RESPONSE TO CFTC ARGUMENT I(B)(2) ...............................................4

The Promissory Notes and Loan Arrangement Severed The
Ownership Rights Of The Lenders ............................................................4

This Court Must Find That There Was No Agency
Relationship Or Remand For Further Fact-Finding....................................5

There Can Be No Pooling Of Funds Where The Lenders No
Longer Owned The Monies Lent To The Oasis Entities.............................6

i

POINT III ..................................................................................................8

    THE METHOD OF REMUNERATION IS A MATERIAL ISSUE
    OF FACT AND THIS COURT MUST REVERSE THE GRANT
    OF SUMMARY JUDGMENT AND REMAND THE CASE TO
    THE DISTRICT COURT ...................................................................8

    IN RESPONSE TO CFTC ARGUMENTS I(A) AND II(A) ..............8

POINT IV .................................................................................................10

    THE CFTC ARGUES THAT THE COMMODITIES
    EXCHANGE ACT SHOULD BE INTERPRETED BROADLY
    AND THEY INCORRECTLY CONCLUDE THAT IT
    ENCOMPASSES THE FACTS OF THIS CASE .............................10

    IN RESPONSE TO POINT I(B) ....................................................10

POINT V ...................................................................................................13

    THE CFTC INCORRECTLY ASSERTS THAT THE DISTRICT
    COURT PROPERLY FOUND THAT THE FUNDS WERE FOR
    THE PURPOSE OF TRADING IN COMMODITIES ....................13

    IN RESPONSE TO POINT II(B) ...................................................13

POINT VI ..................................................................................................15

    THE OASIS ENTITIES AND MR. DACORTA WERE
    ELIGIBLE CONTRACT PARTICIPANTS AND THE DISTRICT
    COURT ERRED IN ITS DECISION FOR SUMMARY
    JUDGMENT ...................................................................................15

    ADDRESSING POINT III OF THE CFTC'S BRIEF ....................15

TABLE OF AUTHORITIES

Page(s)

Cases

*CFTC v. Amerman*,
    645 F.App'x 938, 941-42 (11th Cir. 2016)......................................................6, 9, 14

*CFTC v. Equity Financial Group LLC*,
    572 F.3d 150, 158 (3rd Cir. 2009) ...............................................................6,7, 9

*CFTC v. Equity Fin. Group, LLC*,
    2006 WL 3359418, at *2 [DNJ Nov. 16, 2006] ...................................................9

*CFTC v. Gibraltar Monetary Corp., Inc.*,
    575 F.3d 1180, 1189 (11th Cir. 2009).................................................................5

*CFTC v. Heritage Capital Advisory Services, Ltd.*,
    823 F.2d 171, 173 (7th Cir. 1987) .......................................................................7

*CFTC v Perkins*,
    2009 WL 806576, at *4 [DNJ Mar. 25, 2009],
    *affd,* 385 Fed Appx 251 [3d Cir 2010] ...............................................................9

*CFTC v. Vision Capital Corp.*,
    2007 WL 4246302, at *2 (D Utah Nov. 28, 2007).............................................9

*Commodity Trend Service, Inc. v. CFTC*,
    233 F.3d 981, 991-992 (7th Cir. 2000)..............................................................5

*Lopez v. Dean Witter Reynolds, Inc.*,
    805 F.2d 880, 884 (9th Cir. 1986) ...................................................................7, 9

*Nilsen v Prudential-Bache Sec.*,
    761 F Supp 279, 292 [SDNY 1991].....................................................................9

iii

<u>Statutes</u>

7 U.S.C. § 1a(10) ................................................................................14

7 U.S.C. § 1a(18)(A)(iv)(II)................................................................15

7 U.S.C. § 1a(18)(A)(v)(III) ..........................................................15, 16

7 U.S.C. § 6b.......................................................................................3

Commodity Exchange Act § 4b ....................................................3, 5, 8

<u>Other</u>

Restatement (Second) of Agency § 1 (1958) .......................................5, 6

<u>POINT I</u>
<u>NEITHER MR. DACORTA NOR THE OASIS ENTITIES TRADED FOR OR ON BEHALF OF ANY INDIVIDUAL AND THIS ISSUE WAS ARGUED IN THE COURT BELOW AND PRESERVED FOR APPELLATE REVIEW.</u>

IN RESPONSE TO THE CFTC'S ARGUMENT IN POINT I(A)

*<u>The Issue Raised Under 7 U.S.C. §6b Was Preserved For Appellate Review In Mr. DaCorta's Motion To Dismiss</u>*.

The Commodity Futures Trading Commission (hereinafter "CFTC") argues in Point I of their answering brief  (Doc. 39 pg. 28-29) that Mr. DaCorta failed to argue in the district court that he did not trade commodities for or on behalf of others and, they argue, that the issue is unpreserved and waived. The CFTC is wrong. Mr. DaCorta made extensive argument on this issue in both his motion to dismiss and in his response in opposition to the CFTC's motion for summary judgment.

Mr. DaCorta argued in his motion for summary judgement that he never solicited individuals to trade in commodities and that he did not trade for individuals. Appendix IX (ECF No. 750). For example, Mr. DaCorta states that *OIG did not trade for any individual resident of the United States or any group of residents in the United States in any capacity*. Appendix IX pg. 104 (ECF No. 750 pg. 7).

As further evidence that Mr. DaCorta argued that he did not trade for or on behalf of individuals, he states in his motion for summary judgment that *OIG traded exclusively for its own corporate account as an Eligible Contract Participant ("ECP")*. Appendix IX pg. 136 (ECF No. 750 pg. 39). In that same paragraph

1

DaCorta argues that *OM traded under a rule exemption for a few limited partners as well as ECP and Accredited Investors ("AI). But OIG never traded for individuals...* Appendix IX pg. 136 (ECF Doc. 750 pg. 39). It is also relevant that through all of his motions, Mr. DaCorta asserts that he never engaged in retail forex transactions, i.e. transactions with individuals or on behalf of individuals. Appendix IX pg. 136 (ECF Doc. 750 pg. 39). Again, just a few pages later, he argues *Neither OGLtd, OGSA or OIG traded for any individual resident of the United States in any capacity.* Appendix IX pg. 138 (ECF Doc. 750 pg. 41).

In addition to using the language that he never traded in commodities on behalf of individuals, Mr. DaCorta asserted that he never operated any retail foreign transactions or agreements, nor did he have any retail forex customers. He asserts that *Mr. DaCorta did not operate, manage, or engage in any retail foreign transactions.* Appendix IX pg. 140 (ECF Doc. 750 pg. 43) *and neither did OM nor OIG ever offer any retail forex account agreements (17 CFR §5.1(j)). OM or OIG had no retail forex customers.* Appendix IX pg. 140 (ECF Doc. 750 pg. 43). *Finally, neither OM nor OIG transacted any retail forex business.* Appendix IX pg. 140 (ECF Doc. 750 pg. 43).

Stating that he did not operate "retail" is the same as stating that he did not engage individuals in commodities trading and did not trade on or behalf of any

2

individuals, as is required under 7 U.S.C. §6b(a)(1) (CEA §4b) in order to find that he was liable for any unlawful acts under the CEA.

*The Issue Raised Under 7 U.S.C. §6b Was Preserved For Appellate Review In Mr. DaCorta's Answer To The CFTC's Motion For Summary Judgment*.

In Mr. DaCorta's answer to the CFTC's motion for summary judgment he argues that *OIG did not trade for any individual resident of the United States or any group of residents in the United States in any capacity. (DaCorta Second Motion to Dismiss Doc. 663 pg. 6 ¶ 25)* and *OGLtd or OGSA did no retail forex transactions*. Appendix X pg. 200 (ECF Doc. 757 pg. 4).

Mr. DaCorta consistently argued that he was not trading commodities for or on behalf of individuals, debunking the CFTC's assertion that this argument was not made in the lower court. In his answer to the CFTC's motion for summary judgement he again argues *Neither OGLtd, OGSA or IIG traded for any individual resident of the United States in Any capacity.* Appendix X pg. 202 (ECF Doc. 757 pg. 6).

The CFTC's assertion under §4b  (7 U.S.C.  §6b) that Mr. DaCorta never argued this in the court below is perfectly debunked as Mr. DaCort argued that he never traded commodities for or on behalf of individuals no less than nine times. The CFTC's argument has no merit and Mr. DaCorta preserved for appellate review the argument that he never traded commodities for or on behalf of individuals as is required for the CFTC's case under 7 U.S.C. §6b (CEA 4b).

## POINT II

## THERE WAS NO AGENCY LIKE RELATIONSHIP AND THE LENDERS DID NOT HAVE AN OWNERSHIP INTEREST IN THE FUNDS IN QUESTION.

## IN RESPONSE TO CFTC ARGUMENT I(B)(2)

The CFTC argues that there existed an agency like relationship and therefore, they argue, Mr. DaCorta was trading *for or on behalf* of other individuals. (See Appellee Brief pg. 25 Doc. 39 pg. 36). The Appellee's argument is premised on the supposition that the lenders still owned the funds that Oasis had borrowed, and that Oasis merely had custodial authority over the funds and those funds still belonged to the alleged victims. (See Appellee Brief pg. 26 Doc. 39 pg. 37). The CFTC is wrong because the lenders no longer owned those funds pursuant to their signing the promissory note and loan agreement.

*The Promissory Notes and Loan Arrangement Severed The Ownership Rights Of The Lenders*.

The promissory note and loan agreement legally severed the ownership rights of the lenders. Those people no longer owned those funds. What they owned were accounts receivable, i.e. the right to be repaid according to the terms of the loan agreement and risk disclosure agreement.

This is a significant point that has two consequences: First, it precludes any agency relationship as argued for the first time on appeal by the CFTC, and second, it precludes the CFTC's assertion that there existed the pooling of any funds.

4

*This Court Must Find That There Was No Agency Relationship Or Remand For Further Fact-Finding*.

An agency relationship requires that the actor act for or on behalf of the victim. The Seventh Circuit has held that the antifraud provisions of the Commodity Exchange Act §4b only apply where there is an agency relationship between the actors, i.e. one is acting for or on behalf of the victim. *Commodity Trend Service, Inc. v. CFTC*, 233 F.3d 981, 991-992 (7th Cir. 2000).

The Eleventh Circuit, when interpreting whether an agency relationship exists, has cited to the treatise Restatement Second of Agency §1. *Commodity Futures Trading Commission v. Gibraltar Monetary Corp., Inc.*, 575 F.3d 1180, 1189 (11th Cir. 2009). The Restatement of Agency states the following: The relation of agency is created as the result of conduct by two parties manifesting that one of them is willing for the other to act for him subject to his control, and that the other consents so to act. The principal must in some manner indicate that the agent is to act for him, and the agent must act or agree to act on the principal's behalf and subject to his control. Restatement (Second) of Agency § 1 (1958)

The agency relation results if, but only if, there is an understanding between the parties which, as interpreted by the court, creates a fiduciary relation in which the fiduciary is subject to the directions of the one on whose account he acts. It is the element of continuous subjection to the will of the principal which distinguishes the

5

agent from other fiduciaries and the agency agreement from other agreements. Restatement (Second) of Agency § 1 (1958)

Oasis, according to the terms of the loan agreement were never subject to the directions of the lenders in this case. The contractual agreement is clear that Oasis was free to invest the money lent to them in a variety of places and they were not subject to direction of the lenders. Whether the Oasis entities were acting as the agents of the lenders is a question of fact that was never decided by the district court. Whether there was any agency like relationship at all is determinative of whether §4b and the antifraud provisions of the Commodity Exchange Act are even applicable here.

This Court must find that there was not agency relationship or remand this case for further fact finding to the district court.

### *There Can Be No Pooling Of Funds Where The Lenders No Longer Owned The Monies Lent To The Oasis Entities*.

Where the ownership rights of the lenders were severed from the funds, it precludes the notion that the Oasis entities were pooling the funds of the lenders. The issue of ownership of the funds in the Oasis accounts was never directly addressed by the district court. Pooling cannot take place unless the lenders retained an ownership interest in those funds. *CFTC v. Amerman*, 645 F.App'x 938, 941-42 (11th Cir. 2016) holding that the *sine qua non* of a commodity pool is the aggregation of *investor's funds* into a single account [emphasis added];  see also *CFTC v. Equity*

6

*Financial Group LLC*, 572 F.3d 150, 158 (3rd Cir. 2009) holding defendant was a commodity pool when he combined *investor funds* into a single, commingled account [emphasis added]; *Lopez v. Dean Witter Reynolds, Inc.*, 805 F.2d 880, 884 (9th Cir. 1986) holding that factors to be present to find that a commodity pool existed are that an investment organization combines *investor funds* into a single account for the purpose of investing in commodity futures contracts [emphasis added]; *CFTC v. Heritage Capital Advisory Services, Ltd.*, 823 F.2d 171, 173 (7th Cir. 1987) holding that a commodity pool operator is one who solicits and pools the *funds of others* for the purpose of trading on the commodities market [emphasis added]. It is universally held that the investors must maintain an ownership interest in the funds invested in commodities in order for a commodity pool to exist.

According to the loan agreements and risk disclosure agreements, signed by all the lenders, the ownership rights of the lenders were severed. They did not have an ownership interest in those funds when they were placed in the Oasis accounts and, therefore, there could not have been a pooling of investor funds.

If the promissory notes and the risk disclosure agreements severed the ownership rights of the lenders, and Oasis was not investing the money of the lenders then the CFTC's arguments must fail, i.e. there did not exist a commodity pool, and Oasis did not trade for or on behalf of the lenders. This issue must be remanded to the district court for further fact-finding and argument.

POINT III

THE METHOD OF REMUNERATION IS A MATERIAL ISSUE OF FACT AND THIS COURT MUST REVERSE THE GRANT OF SUMMARY JUDGMENT AND REMAND THE CASE TO THE DISTRICT COURT.

IN RESPONSE TO CFTC ARGUMENTS I(A) AND II(A)

The CFTC argues that the payment of spread fees or the transaction fees bring the forex transactions within the ambit of §4b of the CEA. (See Appellee Brief pgs. 19 and 29, Doc. 39 pgs. 30 and 40). The CFTC argues that the method of remuneration is relevant in determining whether there existed commodity pools, commodity pool operators, associated persons, etc.

However, while the CFTC finds the payment of transaction fees as a method of remuneration relevant, they argue precisely the opposite with regard to the sharing of profits or losses as a method of remuneration. The CFTC takes the contradictory position that the distribution of profits and losses is not relevant to the finding of a commodity pool or commodity pool operators, but the sharing of transaction fees, they argue, is determinative. The CFTC's position regarding the two methods of repayment is not only contradictory, but it is also contrary to the majority of Circuit and District Court case law.

Mr. DaCorta argued throughout his initial brief that the lenders did not absorb profits and losses according to the loan agreement. Therefore, he did not trade for or on behalf of the lenders, precluding the application of CEA §4b. A number of

8

Circuits hold that the sharing of profits or losses is an essential element to finding that a commodity pool existed. *Lopez v. Dean Witter Reynolds, Inc.,* 805 F.2d 880, 884 (9th Cir. 1986); *CFTC v. Amerman*, 645 Fed.Appx. 938, 942 (11th Cir. 2016); *CFTC v. Equity Financial Group LLC*, 572 F.3d 150, 158 (3rd Cir. 2009); *CFTC v. Vision Capital Corp.*, 2007 WL 4246302, at *2 (D Utah Nov. 28, 2007); *Commodity Futures Trading Com'n v Perkins*, 2009 WL 806576, at *4 [DNJ Mar. 25, 2009], affd, 385 Fed Appx 251 [3d Cir 2010]; *Commodity Futures Trading Com'n v Equity Fin. Group, LLC*, 2006 WL 3359418, at *2 [DNJ Nov. 16, 2006]; *Nilsen v Prudential-Bache Sec.*, 761 F Supp 279, 292 [SDNY 1991].

With near unanimity, both Circuit Courts and District Courts throughout the nation require the existence of sharing profits and losses in order to find the existence of a commodity pool. The CFTC's argument under Point II(A) (Doc. 39 pg. 40) has no support in case law. A Westlaw search of relevant case law revealed that there is no case law that supports the notion that paying transaction fees brings any type of transaction into the ambit of the CEA. In fact, the CFTC does not cite any case law to support the proposition that pro rata distribution of profit and losses is not essential to the existence of a commodity pool or that payment of transaction fees is relevant.

The CFTC attempts to make the argument that the profits and losses do not have to be shared pro rata in order for there to exist a commodity pool. In a footnote to their argument they assert that commodity pools may have special allocations or

9

distributions that are not pro rata. (Doc. 39 pg. 42 fn. 10). To be clear, Mr. DaCorta has never argued that profits and losses must be distributed pro rata in order for there to be a commodity pool. That is a characterization that appears exclusively in the CFTC's brief. Whatever the form of the distribution, what is being distributed is a form of profits and losses. And that did not happen in this case.

The Oasis entities did not share profits and losses with the lenders. They were repaid with either interest or transaction fees, whichever was greater. The fact that lenders were never subject to the risk of profits or losses is determinative in this case that no commodity pool existed and that Oasis and Mr. DaCorta were not subject to the antifraud provisions of CEA §4b.

<u>POINT IV</u>

<u>THE CFTC ARGUES THAT THE COMMODITIES EXCHANGE ACT SHOULD BE INTERPRETED BROADLY AND THEY INCORRECLTY CONCLUDE THAT IT ENCOMPASSES THE FACTS OF THIS CASE</u>.

<u>IN RESPONSE TO POINT I(B)</u>

The CFTC argues under Point I(B) of their brief (Doc. 39 pg. 31) that this Court must be guided by the principle that the CEA is a remedial statute that protects the investor and must be construed liberally. The CEA, they argue, is intended to deter and prevent disruptions to the market and protect all market participants. (Doc. 39 pg. 32.

The remedial nature of the statute is to protect those who are trading in commodities. The lenders in this case were not trading in commodities; they were lending money, and they received a promissory note in exchange. The statute is not so broad as to encompass the regulation of loans and promissory notes.

In conjunction with this argument, the CFTC argues that the solicitations gave the impression that the Oasis entities were trading in commodities on behalf of others. This is simply untrue and has no factual basis.

Each of the lenders signed a Promissory Note (Appendix IX Doc. 27 pg. 149), which explained the method of repayment and an Agreement and Risk Disclosures document (Appendix IX Doc. 27 pg. 152). The documents explain clearly that the lenders were making unsecured loans and that they would be repaid in either interest or fees. Furthermore, the lenders were expressly told in those agreements that there was a substantial amount of risk involved in all the investments made by Oasis.

The CFTC argues that the transcripts of the phone calls between Mr. DaCorta and the lenders gave the impression that he was trading in commodities on their behalf. This is untrue. In each of the transcripts of phone calls it is made clear that the lenders are loaning money to Oasis and that they will not be paid in profits or losses, but in interest or fees. The prospective customers on the phone calls are, at all times, referred to as lenders, not investors. The following is an excerpt from those transcripts where Mr. DaCorta explains that they are lenders:

11

*You're not an account with us, you're a lender to us, so we have an obligation to pay you. We pay you a minimum of the 12 percent or the fees. You pay us nothing.*

*The only thing you may incur is a wire fee from your bank. Obviously, we're wiring money back and forth, if you're taking withdrawals or you're sending deposits, but that's from the bank charging, we don't charge anything.*

*So there are no fees. The only thing that you're going to get – you're going to get from us is interest and special interest. The interest is the minimum of 12percent. The special interest is anything above the 12 percent.*

*And again, you're a lender to us, you're not a – you're not a customer, so we don't charge you any fees of any kind, so that's –that's – that's any easy one to answer.*

(Appendix II Doc. 20 pg. 25 Transcript page 22)

Mr. DaCorta makes it clear that the prospective clients are lending money to Oasis. He repeatedly states that they are not accounts, i.e. they are not investors and he is not trading on their behalf. He is borrowing money from them and paying them back in interest. The phone calls and transcripts of calls are consistent with this excerpt. There is never any talk of trading in commodities on behalf of the lenders.

The CFTC's argument that either the Loan Agreement, Risk Disclosure or the transcripts of the phone calls gave the impression that either Oasis or Mr. DaCorta would be trading in commodities on behalf of anyone has no basis in fact.

12

## POINT V

## THE CFTC INCORRECTLY ASSERTS THAT THE DISTRICT COURT PROPERLY FOUND THAT THE FUNDS WERE FOR THE PURPOSE OF TRADING IN COMMODITIES.

The CFTC argues that the district court's holding that the funds were for the purpose of trading in commodities. The CFTC cites two reasons: first, Mr. DaCorta's trial testimony from his criminal trial; second, the bank analysis of the CFTC investigators. Neither of these support a finding that funds were solicited for the purpose of trading commodities for or on behalf of others.

First, the citation to Mr. DaCorta's testimony by the CFTC at Doc. 39 pg. 43 referring to Appendix IV pg. 15 is a excerpt taken out of context. The testimony states that the funds were "loaned" to OIG, and they were then used for a variety of purposes. When the funds were loaned to the Oasis entities, the lenders no longer had an ownership interest in them. Oasis was not trading in commodities for or on behalf of those lenders.

The excerpt of that testimony taken together with both the transcripts of phone conversations previously cited (Appendix II Doc. 20 pg. 25 Transcript page 22) of Mr. DaCorta telling lenders that Oasis was not trading on their behalf and they were lending money to Oasis, and the Promissory Note, Loan Agreement, and Risk Disclosure Agreement is conclusive evidence that the Oasis entities and Mr. DaCorta were not trading commodities for or on behalf of the lenders.

13

The CFTC also asserts that because the funds loaned to Oasis were put into a bank account there must have existed a commodity pool. (CFTC brief Doc. 39 pg. 45). However, no such fact exists in the statutory definition of commodity pool. Under 7 U.S.C. §1a(10), defining commodity pool, no part of the statute states that placing the funds in a bank account is determinative of the existence of a commodity pool. Nor does the CFTC cite to any CFTC regulation that would support such an assertion. Both the CFTC and the district court rely exclusively on *CFTC v. Amerman*, 645 F.Appx 938 (11th Cir. 2016). However, in that case, the investors retained an ownership interest in the funds invested and they shared in the profits and losses of their investment. The *Amerman* Court specifically held that the relevant feature of the pooling of funds is to limit the liability of individual investors so that each investor shares the profits and losses on a pro rata basis.

This is an important distinguishing fact compared to this case. When Oasis took in the funds from the lenders and put them into a bank account, the lenders no longer had an ownership interest in those funds. Their liability and ownership interest was severed by the promissory note and loan agreement, and they did not share in profits and losses whether on a pro rata basis or any other basis. There can be no commodity pool where the lenders retained no ownership interest.

14

<u>POINT VI</u>

<u>THE OASIS ENTITIES AND MR. DACORTA WERE ELIGIBLE CONTRACT PARTICIPANTS AND THE DISTRICT COURT ERRED IN ITS DECISION FOR SUMMARY JUDGMENT</u>.

ADDRESSING POINT III OF THE CFTC'S BRIEF.

The CFTC argues incorrectly that the district court's analysis of the Oasis Entities' status as Eligible Contract Participants was sound. However, the district court held that Oasis did not qualify as an ECP under "one" of the subsections, i.e. 7 U.S.C. § 1a(18)(A)(iv)(II), but ignored arguments under 1a(18)(A)(v)(III).

Mr. DaCorta argued that he was an ECP under §1a(18)(A)(v)(III), defined as follows: *The term eligible contract participant means (A) acting for its own account – (v) a corporation, partnership, proprietorship, organization, trust, or other entity (III) that (aa) has a net worth exceeding $1,000,000; and (bb) enters into an agreement, contract, or transaction connection with the conduct of the entity's business or to manage the risk associated with an asset or liability owned or incurred or reasonable likely to be owned or incurred by the entity in the conduct of the entity's business.*

He put forth facts to support this argument, stating that he was an ECP because they operated no commodity pools and he asserted that the average transaction fee income for the company was $1,468,565.88 (Appendix IX pg. 135) and OIG traded

15

exclusively for its own corporate account as an Eligible Contract Participant with funds derived from lenders (Appendix IX pg. 136).

The assertion by the district court, and now the CFTC on appeal, is that Oasis did not qualify under one of the many subsections defining an Eligible Contract Participant. However, DaCorta and Oasis did qualify and asserted facts as to that qualification under §1a(18)(A)(v)(III). While the CFTC argues that the organization of Mr. DaCorta's motion for summary judgment was not compliant with the district court's rules, it cannot deny that the facts to support Mr. DaCorta's and Oasis' qualifications were argued in the court below.

This Court must find that Mr. DaCorta and Oasis were ECPs and the CFTC did not have jurisdiction to bring the instant law suit against him as he was exempt under their rules.

Dated: October 8, 2024

/s/ Stephen N. Preziosi
Stephen N. Preziosi, Esq.
48 Wall Street, 11th Floor
New York, New York 10005
212-960-8267

# <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT</u>

1.      This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this document contained 3,964 words.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in proportionally spaced typeface using Microsoft Word in Times New Roman typeface and 14-point font size.

/s/ Stephen N. Preziosi

_____

Stephen N. Preziosi, Esq.
*Attorney for Appellant*

Dated: October 8, 2024